Good morning, Your Honors, and may it please the Court, Nick Pladson, Assistant Attorney General on behalf of Minnesota's Attorney General Keith Ellison, Minnesota's Commissioner of the Department of Labor and Industry Nicole Blissenbach, and Minnesota's Governor Tim Walls. Your Honors, this case is not about the substantive merits of the pre-enforcement challenge lodged by the plaintiffs below. It's about jurisdiction and whether the plaintiffs have established, as a matter of fact, in response to our factual challenge under Rule 12b.1, that there is jurisdiction. Now, to establish jurisdiction in the face of our raised sovereign immunity defense, they have to establish the ex parte young exception by a preponderance of the evidence. Plaintiffs thus had to prove that each State official both enforces or has a connection to the enforcement of the law that they're challenging and that there is an imminent threat or threats of enforcement of the act by that official against the plaintiffs themselves. They didn't do that. In sworn declarations, the Attorney General and the Commissioner disavowed any intent to presently enforce the law. Plaintiffs offered no evidence in response. They did not verify their complaints. They did not submit any other evidence. They did not ask for an evidentiary hearing or seek discovery on jurisdiction. The District Court disregarded the evidentiary record, misapplied ex parte young, treated political speech by the Governor and poster printing by the Commissioner as if they were enforcement actions, and essentially held all three State officers jointly and severally proper for purposes of ex parte young. That was error. This case fails on both parts, both prongs of ex parte young, and sovereign immunity bars the suit. I'll address each State officer in turn, starting with Governor Walz. Now, Governor Walz was not initially a named defendant in this case. The Governor was only named months after the case was commenced, after he made a public speech touting the passage of the law and incorrectly stating the penalties for the law. But Governor Walz, despite his speech and his incorrect statement of the law, still doesn't have a connection with the enforcement of the law sufficient for ex parte young. There's no general or specific authority in the Act that gives him the authority to enforce the Act. Supervisory authority as the Governor is not enough. He threatened to have the Act enforced. He did not threaten anyone with to have the Act enforced, Your Honor, respectfully. He stated at a union convention that the, we've passed the captive audience ban speech or captive audience ban, and now you go to jail if you violate it. Now, that's just wrong as a matter of law. My opponents concede that that's incorrect. It's just not, there's no law that does that. And he has no authority to do so. There's nothing in the Act or his powers as the Governor to take an enforcement action in this case. Now, my opponents are going to stand up here and tell you that his ability to appoint the DLI Commissioner is enough. But as this Court's decisions in Ballot v. Lombardi and Church v. Missouri hold clearly, the power to appoint is not the same as the power that the appointee has to enforce an Act. As I understand it, you're also arguing that the Commissioner cannot enforce, right? That's correct. If that's correct, does that solve your Governor problem? Does that resolve the issue of the Governor's authority? I think it's very conclusive if it does. But I think even if you disagree with our arguments that the Commissioner lacks a connection, I think this still doesn't put the Governor in this case. Because, just because the appointee is the one who has the ability to bring the Act, unless there is a mechanism for the Governor to actually enforce the law, which there isn't here, that's Church v. Missouri. Unless the Governor has a mechanism to do so, merely appointing the person who has the power to do so is not a sufficient connection for Ex Parte Young. Now, they also raised some other arguments that he could retain counsel or he could direct the Attorney General. But if he doesn't have the power to enforce the Act in the first instance, retaining counsel is not going to get him there. And he can't direct the Attorney General to enforce the Act because of the separation of powers in Minnesota's executive branch. So, that's the long and the short of it, Your Honors, is that Ex Parte Young fails as to the Governor on prong one. And no matter what he said, take the personalities out of it. A political elected official is going to say a lot of things. You can change the partisanship, you can change the issues. That cannot manifest a statutory connection to enforcing the law that doesn't already exist on the books. And on the factual challenge posture, I mean, we have to look at the plain language of what the statements were. And I think we don't grant any inferences in favor of anyone. And I think on their face, especially the second one, was that the captive audience, the August 2024 speech, that the captive audience law still exists, which is true. And he was glad that he got sued over it. I'm not sure what that does in terms of actually threatening anyone with enforcement and certainly not directed at the plaintiffs or directing anybody in his cabinet or otherwise to do an enforcement action. Now moving to the DLI Commissioner. Now there's no specific authority for the DLI Commissioner in 181.531 to enforce the act. There's no mechanism. She has general investigative authority over five chapters of Minnesota state laws. And that includes Chapter 181, which is where this law that they're challenging exists. But Commissioner Blissenbach's power and mechanisms to actually enforce the provisions that she has authority over do not include the ability to enforce Section 181.531. The mechanisms she has, as we discussed in the Church v. Missouri case, you've got to have a mechanism to enforce to be connected. Her enforcement mechanisms are in Section 177.27. And this spells out her ability to seek compliance orders, issue penalties, and so on and so forth. But it enumerates specific provisions of those chapters that she can use those tools with. So plainly, the tools that she has to enforce any of the laws are limited to specific provisions, not including the law challenged here. Now they are also going to come up here and tell you that her promulgating a poster, an informational poster about what the law says, is tantamount to enforcement. But it's not an enforcement or a threat of enforcement when it's simply explaining what the law is and providing that to the public. If this Court's decisions indicate that a state officer gives, when a state officer gives effect to a statute in a manner that injures a plaintiff and violates their constitutional rights, that is a sufficient traceability or Your client's position, in essence, is there's no pre-enforcement, there's no Federal jurisdiction to entertain a pre-enforcement suit. Precisely, Your Honor. Not here. And what's the best parallel to that in the universe of this kind of case? I'm sorry, I'm not following the question. No pre-enforcement authority. The Supreme Court does not appreciate that concept. That there's no pre-enforcement authority? Well, I think the Supreme Court has said in the Jackson v. Holdman's Health that there's no unqualified right to a pre-enforcement challenge in Federal court. This case could be broadened. I'm going to ask you for, okay, give me a case where I agree it's not categorical. Where's a case where a legislature and an executive branch successfully chopped off the normal pre-enforcement jurisdiction of the courts? This Court's decision in Digital Recognition Technologies v. Hutchinson. That's a decision out of this Court regarding an Arkansas license plate reader First Amendment pre-enforcement challenge. It's the same posture that this case is on. This Court said that both the Governor and the Attorney General lack a sufficient connection for ex parte young purposes and therefore there could be no, there was only a private right of action. In that case, similar to here, there is a private right of action in this case. So, this case, this is not immune from review. I know my opposing counsel are going to make a lot of assertions that this is very similar to the Texas law in Holdman's Health, but that's just plainly not true. There's a private right of action. The plaintiffs could bring a pre-enforcement challenge in State court. The District Court talked a bit about Holdman's Health and it seemed to think that that drove the outcome here. It's hard on appeal because the District Court ruled from the bench. What's your understanding of what the District Court was using Holdman's Health for below? I'm not sure. I think I wasn't sure either, Your Honor, and that was part of the concern. And again, it's tough because it was a ruling from the bench given time. You're right. You're right. I think the Court was concerned there and was entertaining this idea that there was some distance between what this Court's ruled in Minnesota RFL versus Freeman regarding that there has to be a credible threat of enforcement to establish ex parte young and this idea that so long as individuals in the State of Minnesota possess or may or must enforce the law, that somehow that was sufficient to get past the second prong of ex parte young. And I think that's where the error is in the District Court's decision because this Court's decisions in Minnesota RFL both in 2022, Judge Kobus, you're on the panel, and last summer where Judge Erickson, you wrote, and Judge Loken, you joined, indicate that once an official has established that they have no present intent to enforce, that's the end of it. That defeats ex parte young, no matter if it's pre-enforcement, post-enforcement, that sort of thing. I think that resolves this case. We've submitted the declarations from the individuals, from the Attorney General, who actually does have discretionary authority to enforce, and the Department of Labor Commissioner, who we dispute has a sufficient connection, but even so, we've submitted a declaration stating that they have no intent to do so, just in accordance with this Circuit's laws. You know, when Judge Mendez was talking about the Texas case, she started off talking about how the difficulties of private enforcement, the quality of lawyering, and commented on how the lawyering in this case had already arrived at a position that it was superior and that if we're to reach the merits, it should be nice to have people that were competent, capable, and were actually getting to the merits. And then once you started going on to make, because that was all before we took the argument, and there's a little tweaking on some of the facts, and then we get back to where the opinion is, and when she comes back into the opinion, at that point I really couldn't tell at all what this whole women's health thing was, how was it really playing in at that point? I mean, so, and yet the entire conversation's laced with the, you know, repeated references about it, and I just wonder what was your understanding of what role that case was playing in this determination by Judge Mendez? Well, I think the lower court over-read Whole Woman's Health. I think what Whole Woman's Health is, is it arrived at the Supreme Court on a 12b6. This was not a 12b6, so that's number one. Eighth Circuit treats a 12b6 challenge under Ex parte Young, you only have to meet the first prong, because it's a plausibly pled complaint. If we're on a factual challenge, though, you've got to meet both prongs. And so that was why we brought the 12b1 factual challenge. And, you know, and frankly, sovereign immunity is the right, is the privilege of the States to not be sued in the first instance. And so I think it was important, you know, to Judge Mendez' compliment about our advocacy skills. I certainly appreciate it, but the fact of the matter is we didn't believe, unless they had proven subject matter jurisdiction, that we even should be in the court. So with that, I'm in my rebuttal time. I will save the remainder. Mr. Revenue. Good morning. Tom Revenue appearing on behalf of the appellees, the Minnesota Chapter of Associated Builders, the NFIB, and Lake Town Electric. May it please the Court, Your Honors. Just a few moments ago, I heard counsel say there's no evidence in the record with regard to what has transpired here. And yet, at the district court proceedings, opposing counsel conceded a number of items. Number one, he conceded that Governor Walz stood up on April 23rd of 2024 and said, you go to jail now if you hold essentially captive audience speeches in Minnesota because you can't intimidate people. And to remind the Court, this case was filed on February 20th of 2024. So he made the threat after the lawsuit was initiated. Do any of the defendants have the right to imprison anyone under this statute? I would concede, Your Honor, that certainly they do not have the ability to arrest somebody or throw them in jail. However, the issue in ex parte, is there a threat of enforcement? And in addition, we're talking about the threat is dubious on its face, right? Because no one, I mean, we're not talking about a criminal statute here. And isn't that something your friend on the other side suggested, that this was the sort of political dialogue that occurs on both sides of the aisle in the natural course of, you know, being an elected official in a state like Minnesota? Well, I think the District Court properly found that the statement, you go to jail now, is much more than political rhetoric, particularly in the context of the case. The case had been pending. Clearly, Governor Walz would have known that the case was pending when he made these comments. And so, we do believe that that in and of itself is a threat and it is a threat of enforcement. In addition, Your Honor, I'm an attorney and the threat is being made to members of the general public who don't know what the law provider doesn't provide with regard to whether or not you can arrest or not. So, political rhetoric aside, I think in the context of this case. But how is that relevant? I mean, that people may mistakenly believe that they can be jailed for violating the statute. How is that relevant? Well, it goes to chilling. Well, doesn't it go to the authority of the governor or not to enforce it? Not the unreasonable or mistaken belief of people about that? So, I would agree with that question, Your Honor, that it does in fact go to, does he intend to enforce the law? Absolutely. His there is an intent to enforce the law. And to remind the court that at the. I'm sorry, Judge Erickson. We live in an age where hyperbolic, extremist speech is ubiquitous, right? I mean, you just start looking around. I mean, we've got whole campaigns that are built around, you know, lock her up. The idea that there's lawfare going on all over the place. We've got somebody threatening to arrest the governor of California. You got that guy then saying, I don't intend to arrest the governor of California. You got the president saying, lock up the governor of California. Go arrest him. I mean, our nation is a mess when it comes to ridiculous, over-the-top threats. And if we're going to read into every single one of those things a legitimate enforcement threat, we're going to do nothing but these kind of cases until the end of time. So, Your Honor, I would submit to you that there is no case like this in the country. Because if there was a case like this in the country, counsel for the governor would have cited. And in this particular case, Your Honor, what is different from what you just raised is there was an ongoing case. And not only was the case going on, but then they submit these declarations that, hey, we have no present intent to enforce. And the governor, you're right, Your Honor, the governor did not submit that. In fact, at no point in this case. So your argument is, I mean, can the governor order the commissioner to enforce this statute in your view? Yes. Can the governor order the attorney general? So if we're going to get into with regard to the enforcement mechanisms with regard to the with regard to the governor. Well, I mean, can the governor order the attorney general to enforce this? I don't believe that the governor can dictate that the general or that. But you're saying that you think that the commissioner is subject to the governor's authority. So there's a few avenues here, Your Honor, with regard to just speaking specifically with regard to Governor Walz. And we can start with his constitutional duty to enforce the laws. But that's, and I concede, Your Honor, that that is not enough. And I made note of that at the district court. However, under Minnesota Statute Section 806, the law is pretty clear that Governor Walz can employ counsel in any action proceeding, in any action or proceeding, if the attorney general is adverse in any way. So you have the attorney general. Is this what we've described as a series of hypotheticals? Well, I wouldn't say that. Government's made a statement. And I mean, you have several steps here before you get to actual enforcement, don't you? You need the governor hiring counsel. You need some sort of judicial determination that the governor is adverse to the attorney general or the attorney general is adverse to the state. And then you need this private counsel to seek to enforce the statute, don't you? So I don't think, to take your question, Your Honor, I don't think this is a set of hypotheticals in this particular case. Because the facts play out that, one, you have Governor Walz who makes that people are going to be arrested. Two, after making that and after he is brought in as a party to this action, what does Governor Walz do when he is running for vice president on August 13, 2024? He says, we ban those damn captive audience speeches meetings for good in Minnesota. Last time I said that at a union meeting, they sued me over. It was the best thing ever that I said, we're going to continue to ban those captive audience speeches. That's August 13, 2024. And by the way, Your Honor, at no point after August 13, after he had this second speech, was there another declaration submitted by Keith Ellison or by Nicole Blissenbach. At no point did they disclaim that. And in fact, while this case was pending, the Minnesota State Legislature amended the statute. And they amended the statute that essentially said that, Commissioner Blissenbach, you have to prepare and publish a captive audience speech law that employers have to post in their workplaces. And Commissioner Blissenbach will say, well, gee, that's not enforcement. And yet she went ahead and she prepared that notice after filing a declaration with the court saying that she had no intent to enforce. She prepared that declaration after Governor Walz signed the bill, which essentially directed her to prepare the notice, to prepare that notice in five different languages and put on that notice that specifically says that an employee can either contact the Department of Labor and Industry with questions concerning the law or they can contact a lawyer. And that is, in fact, that is chilling and that is indicative of enforcement. So when you ask a question with regard to, well, this is a series of hypotheticals, it's really not because you have to look at what transpired in this case. And you have Governor Walz saying you're going to be arrested. You have Governor Walz saying, I'm glad I was brought into this lawsuit. You have Governor Walz who signs an amendment to the law directing Commissioner Blissenbach to publish a notice. And then she puts on the Department of Labor and Industry website that employers must post this notice. And that is, in fact, enforcement of the law. And this court in the Worth decision noted that administrative actions like that are, in fact, enforcement of the case. So going back, you had asked a question about Governor Walz and with regard to his enforcement mechanism. So Minnesota Chapter 806 allows him to employ his own counsel. And I will note, because this was raised in the reply brief by the appellants, they cite this 1972 case from Bush versus Arrowwood where they say, well, gee, you know, this language was only intended to apply to attorneys being on boards or commissions. And yet the language that they may employ counsel to act in any action, that actually, that language was enacted in 19, or I'm sorry, 2003. And in addition, when they rely on, you know, the headings for Minnesota Chapter 806, talks about employing counsel. Minnesota Statutory Framework says, look, you know, headnotes are mere catchwords and they're not intended to dictate what the contents are. But we believe that under Minnesota Chapter 806, he can employ counsel to enforce the law. Two, under Minnesota Statute Section 404, Subdivision 1, he may remove the commissioner Blissenbach at his pleasure. So he can appoint and he can remove at his pleasure. In the cases that were before this case, before this court and other settings, you didn't have the language where the governor could appoint as well as remove at pleasure. And so there is a distinction there. And he clearly has supervisory authority over Commissioner Blissenbach. So with regard to the reliance on the church decision, I will note that the church decision, I think this court made it very clear that an official must have some connection to the law, and clearly Governor Walz does have connection to the law. And then the last two items that I time for the amicus is with regard to Commissioner Blissenbach. I've already talked about the fact that she does have the ability to enforce and is in fact enforcing the law. And the same with Governor, or I'm sorry, Attorney General Ellison. He certainly has the ability to enforce and he has not disclaimed any of the comments made by Governor Walz, certainly since the August comments. If there aren't any other questions, I'll reserve the time for my amicus. Thank you. Mr. Killian. Good morning, Your Honors. May it please the Court. Brian Killian on behalf of the amici to address the question of how a court should deal with a disavowal of enforcement that is after a case has begun, after a party has established Article III jurisdiction. I don't think there's a dispute amongst the parties that these sorts of disavowals fail to moot a case, that automatic dismissal would otherwise be required on mootness grounds. The Supreme Court's decision last year in FBI v. Fickrey recognized essentially this in a case where the United States had disavowed enforcement on the no-fly list. What the appellants have argued is that an automatic dismissal, although it can't be obtained on mootness grounds, can be obtained on sovereign immunity grounds. Indeed, and they say in page 19 of their reply brief, that there is a higher standard for imminence under the Ex parte Young exception than there is under Article III. In the amici's position, that's a fundamental misunderstanding of sovereign immunity and the Ex parte Young exception. Because Ex parte Young does not subvert the rules of federal jurisdiction that apply in every other situation, Ex parte Young defines an equitable exception that says where the state executive officers, excuse me, where there's a suit against state executive officers, they cannot assert their sovereign immunity as a defense to plaintiffs who are seeking to enjoin enforcement of an unconstitutional state law. And so the Supreme Court in Whole Women's Health, and indeed even all the way back in Ex parte Young itself, recognized that the applies and characterized it in terms of the capacity to enforce, not the probability of enforcement, not the likelihood of enforcement, because that's a jurisdictional element under Article III, not an element of Ex parte Young itself. Now, imminence is often mentioned in these cases, but that's because all cases for prospective injunctive relief have to establish an imminent future injury. And often in these cases, the plaintiffs are seeking a preliminary injunction and have to demonstrate an imminent irreparable injury in the very short term in which the case will be pending. And so imminence comes up rhetorically in these cases, but that does not mean that imminence is itself an element of the Ex parte Young exception. Indeed, if that were the case and there were a rule under Ex parte Young that as soon as a state officer submits a disavowal and recites the magic words, I hereby have no present intention to enforce, there would be some significant concerns for gamesmanship and manipulation. Counsel, I take your argument. Do we agree with your argument? Does our case law agree with it or don't we? So I think some of your older precedents can be construed to be contrary to this position. The real rub is the Freeman case from 2022. Our position is that the state is reading too much. What case is contrary to your? I missed the name of the case. Yeah, I understand. I can't hear you very well either. I'm sorry. I'll try to get closer to the microphone, Your Honor. It is the Freeman decision of 2022, but Judge Loken, it's not our position that it's contrary.  I'm sorry? I thought you said our older cases. Well, Freeman is relying on a case from 2014, I believe, that is abbreviated as Care Committee 2, the second of two cases involving the Care Committee. And Freeman is really the focus. It's not an older case either. Well, if we go all the way back, Judge Loken, there's a case from 1988 from this court that I think is contrary to the position that the state articulates, and that's United Food versus IBP Incorporated, 857 F2nd 422. Just so I understand, you think we went off the rails in Freeman, is that right? I think. But you don't think Freeman forecloses your argument? That's exact, yes. I'm hesitant to say that Freeman went off the rails. I think that Freeman is distinguishable and should not be extended in the way that the state is advocating here. If I may, I'll explain why we think it's distinguishable. You're out of time, so you better be quick. Of course, Your Honor. Freeman involved the Preliminary Injunction Appeal, where the preliminary injunction was denied before Whole Women's Health. And indeed, the Supreme Court decision on Whole Women's Health didn't come down until maybe... So you think Whole Women's Health changed things? I mean, my question to your colleague was, what was the district court's understanding of Whole Women's Health? And I don't know that I got, I don't know that we collectively developed an answer to that. We believe that, I'm hesitant to say changed things because our position is that it has been consistent that... So the district court seemed to rely heavily on that case. Sure. I think it's important because it's clarifying. It's clarifying that imminence is not itself an element of the ex parte exception. And in particular, it's where the Supreme Court is addressing the cause of action against the medical board defendants. There were a slew of defendants whom Whole Women's Health sued in Texas in order to try to get some judicial review of SB 8. And the Supreme Court found that for almost all of those defendants, there was sovereign immunity, except as to the medical board defendants. And because the Supreme Court said the case may proceed against them because, quote, they may or must, may or must take enforcement action. Stop. That was the only requirement for the case to proceed. Not imminence. There was no argument about the imminence or the... Your time's up. Okay. Thank you, Your Honors. Mr. Verbo? Your Honor, the case, Minnesota RFL v. Freeman from 2022, footnote 8. Judge Smith writes for the panel that's unanimous, and they discuss how Whole Women's Health does not change the Eighth Circuit's precedent that you still must show an imminent threat or a threat of imminent enforcement. And so that's the discussion there. The court distinguishes that it is on a dismiss. I will concede that we are on a motion to dismiss, but that is why we brought a factual challenge because we determined as a matter of fact and law that subject matter jurisdiction does not exist. I just want to touch on what the Commissioner, Commissioner Blissenbach's, the notice that she created. The notice simply reiterates what's in the law in compliance with that. She does not have the authority to enforce the notice posting requirement. So although the notice says it must be posted by employers, she has not lifted a finger to do any enforcement. In fact, there is no evidence that anyone has lifted a finger to enforce this act. And I will concede that if this case is dismissed, it is without prejudice, meaning if any of this should change, should the declarations prove to be... Tomorrow, if a new officeholder comes in into any one of these positions and says, you know, we've got to enforce this law, we don't have this argument then. I think this is essentially akin to ripeness. This suit is not ripe. Nobody's threatening them. There is no ongoing constitutional violation, which is the premise of Ex parte Young. You've got to show an ongoing violation, but nobody with the authority to enforce the law is engaging in that. They've disclaimed it, disavowed it, and that is sufficient under both Minnesota RFL v. Freeman and last year's reiteration of the in Minnesota RFL v. Moriarty. So we just say that. One other thing about the Governor, we've got to look at here, the connection prong is helpful because it tells you in what way would you enjoin the official from violating the constitutional rights or preventing the harm. And as I felt the winds changing against me in the district court, I asked this to Judge Menendez and I said, in what would the injunction look like? They aren't suing to enjoin Governor Walz's appointment power. They aren't suing to enjoin his ability to retain counsel. They're suing to enjoin enforcement of the law, but he doesn't have that. At best, they would be suing to enforce an injunction on what he's saying. Now, enjoining a political candidate's speech seems to be a First Amendment problem of a whole entire different character. So with that, I would ask the court to reverse the district court, dismiss without prejudice. Thank you. Thank you, counsel. Case has been thoroughly briefed and argued and we'll take it under advisement. Argument has been helpful.